IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| STEVE RIDDICK, | ) | |
|     Plaintiff, | ) | Civil Case No. 7:21-cv-00178 |
| v. | ) | |
| | ) | |
| | ) | By: Elizabeth K. Dillon |
| JEFFREY KISER, *et al.*, | ) |     United States District Judge |
|     Defendants. | ) | |

**MEMORANDUM OPINION**

Plaintiff Steve Riddick, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, naming four defendants: Jeffery Kiser, A. David Robinson, Harold Clark, and Larry Collins. Riddick's complaint alleges that defendants violated his First Amendment rights and his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1 *et seq.*, by denying him television access which, in turn, denied him the ability to practice his religion. (*See generally* Compl., Dkt. No. 1.)

Defendants have filed a motion for summary judgment, in which they argue that Riddick may not pursue his claims in this case because he failed to exhaust them prior to filing suit. While they acknowledge that Riddick eventually exhausted his administrative remedies, he did not do so until *after* filing suit. Thus, their argument continues, his claims are barred.

The motion is fully briefed and ripe for disposition. For the reasons set forth herein, the court concludes that defendants are entitled to summary judgment. Accordingly, their motion for summary judgment will be granted, and this case will be dismissed without prejudice for failure to exhaust.

Also pending before the court is Riddick's motion for summary judgment, which will be denied. Lastly, in December 2022, Riddick sent a letter to the court complaining about the

length of time that the motion to dismiss and his motion for summary judgment had been pending and requesting that the court, when deciding cases, give "preference and urgency" to his cases, including this one.[1] (Dkt. No. 50.) To the extent that letter is properly construed as a motion, it is denied as moot in light of the court's ruling.

## I. BACKGROUND

Because the court rules only on exhaustion at this time, it is unnecessary to go into any detail concerning Riddick's claims. In general, he alleges that his religious rights were violated because the "Step Down Program," in which he refuses to participate, uses television as an incentive for good behavior. (Compl. 2–3, Dkt. No. 1.) Because he refused to participate, he has been denied a television in his cell and access to a television, including to watch religious programming. (*See generally id.*) He alleges that only in October 2020 did his facility—Red Onion State Prison (Red Onion)—start allowing segregation inmates, regardless of their status in the Step Down Program, to have loaner televisions on Fridays for an hour and a half to watch religious services. He further alleges that only in March 2021 was a television put in C Building's segregation pods. (*Id.* at 3–4.) He complains that he still can only view religious services for one and a half hours per week, which is insufficient "to satisfy the requirement to attend [and] watch services as required by Islam." (*Id.* at 6.)

With regard to exhaustion, Virginia Department of Corrections (VDOC) Operating Procedure (OP) 866.1 is the mechanism used to resolve inmate complaints. (*See* Meade Aff. ¶ 4 & Encl. A, Dkt. No. 24-1.) The specific steps or requirements of the grievance process are not at

---

[1] The case previously was assigned to two other district judges. In January 2022, after the motions had been filed, but before they were ripe, the case was transferred to the undersigned. In June 2022, the case was stayed after it was referred to mediation, along with numerous other cases filed by Riddick. Riddick was appointed counsel solely to assist with the purposes of the mediation, which ultimately was unsuccessful. The case was unstayed on December 2, 2022.

issue here; the dispute is over the timing of the steps relative to the filing of the complaint. So the court will not discuss the process in any detail, except to note that it consists of three basic steps. Each step requires the inmate to file a written document, and they are: (1) an informal complaint; (2) a regular grievance, which must be accepted at intake; and (3) an appeal or appeals, the available number of which vary based on the type of issue raised. (*See* Meade Aff. ¶¶ 6–8; *see also* OP 866.1 § V ("The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed, without satisfactory resolution of the issue.").)

Riddick filed an informal complaint about his inability to watch religious services for more than an hour a week or on more than one day. The informal complaint, although dated December 9, 2020, was received on April 12, 2021.[2] On April 27, 2021, Lt. Barton responded to the informal complaint, advising that the pod television is for all inmates in the pod, that religious television services are scheduled, and that inmates who do not have a television are given one for purposes of watching the religious services. (Meade Aff. ¶ 10.)

Thereafter, Riddick submitted a regular grievance about the same basic issue, dated April 29, 2021. His regular grievance was received in the grievance department on May 4, 2021, and it was date-stamped as received on that date. He did not complain in that grievance about any delay in processing his informal complaint. Assistant Warden Fuller responded to the grievance, and his response largely echoed Lt. Barton's. (*Id.* ¶¶ 11–12.)

---

[2] Riddick included a note at the top of the informal complaint saying that he submitted it on December 9, 2020, and it was not processed. Meade, however, states that informal complaints and grievances are logged on the date they are received, and she presents a copy of Riddick's grievance log, which reflects that numerous informal complaints and regular grievances were processed throughout the relevant time-period. *See infra* at Section II-B. Riddick presents no reason why this particular informal complaint would not have been processed and returned to him.

Riddick appealed Fuller's response on May 18, 2021.  On June 2, 2021, Regional Administrator Manis upheld Fuller's decision, finding no violation of policy.  Manis also informed Riddick that it was his last level of appeal and he had exhausted all administrative remedies.  (*Id.* ¶¶ 13, 15 & Ex. B.)

Based on the above dates, then, Riddick fully exhausted his remedies on June 2, 2021, when his final appeal was denied.  That was more than two months *after* his complaint was filed.  Specifically, his complaint was received by the Clerk on March 26, 2021, but is deemed filed as of March 22, 2021, the date his envelope indicates that he provided it to prison authorities for mailing.  (*See* Compl. 10.)

Accordingly, it is  undisputed that Riddick did not completely exhaust his administrative remedies until *after* filing this lawsuit, using either the filing date or March 26, 2021.  Moreover, before defendants filed their motion, Riddick himself submitted grievance documents to show that he had fully exhausted, including the June 2, 2021 denial of his Level II appeal, dated *after* he filed his lawsuit.  (*See* Dkt. No. 18, at 2.)

In his opposition to the summary judgment motion, however, and for the first time, Riddick states that, from December 2020 through February 2021, he submitted three informal complaints about the issue of being denied religious services, but they were not processed.  He claims that, after those failed attempts to get a response, he believed the grievance process was unavailable to him.  In support, he presents three documents.  The first is an "Offender Request" form that he contends he submitted in February 2021, although it is dated February 2020, and to which he says he never received a response. (Dkt. No. 30-1, at 2.)  The other two are simply handwritten statements by Riddick.  One is dated February 1, 2020, and is a notarized statement by him that his three informal complaint were not processed, and this statement was purportedly

4

sent to the Regional Administrator. (*Id.* at 3.) The other is dated December 10, 2020, and states that he sent an informal complaint about religious services in December 2020, but it was not processed. (*Id.* at 4.)

As to the two notarized statements, they appear to have been written purposefully for responding to the summary judgment motion, although they are backdated. As to the request form, there are several issues with this document. First of all, the document (like one of the statements) is dated February *2020*, rather than February *2021*. Second, it contains no markings or indications that it was ever received in the grievance department. After these issues were raised by counsel, Riddick offered explanations for each. First, he explained that the incorrect year was merely a typographical error when he wrote it, which he alleges was in February 2021. Second, he asserted that the document submitted is a *copy* of the document he sent to the grievance department, but that he never received back the document or any response to it, which is why it does not contain any indication that it was received or that a response was given. (Dkt. No. 32.)

## II.  DISCUSSION

### A. Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

**B. Exhaustion**

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005). Failure to exhaust all levels of administrative review is not proper exhaustion and will bar an inmate's § 1983 action. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Further, to comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that

procedure before filing his § 1983 action. *See id.* at 90–94 (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Further, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

As defendants acknowledge, Riddick fully exhausted his administrative remedies, but he did not complete that process until *after* he filed this lawsuit. Post-filing exhaustion, however, is insufficient for purposes of the PLRA, which requires exhaustion *before* filing suit. *See, e.g.*, *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 675 (4th Cir. 2005) (stating that the PLRA requires exhaustion "before filing an action"); *see also Hayes v. Stanley*, 204 F. App'x 304, 304 n.1 (4th Cir. 2006) ("We conclude that the defect in this case (the failure to exhaust administrative remedies) can only be cured by something more than an amendment to the complaint . . . .").

As another judge of this court has explained,

> By the plain language of the statute, exhaustion of administrative remedies is a precondition to the filing of a prisoner's civil rights action; thus, a plaintiff who filed his lawsuit before exhausting administrative remedies cannot satisfy the § 1997e(a) requirement, even if he later demonstrates that he filed a grievance and appealed it to the highest extent of the prison's grievance procedure after commencing the lawsuit.

*Henderson v. Va.*, No. 7:06CV00408, 2007 WL 2781722, at *19 (W.D. Va. Sept. 21, 2007), aff'd sub nom. *Henderson v. Virginia*, 272 F. App'x 264 (4th Cir. 2008) (citing *Dixon v. Page*,

291 F.3d 485 (7th Cir. 2002)). *Accord Shabazz v. Virginia Dep't of Corr.*, No. 3:10CV638, 2012 WL 463562, at *5 (E.D. Va. Feb. 13, 2012) (agreeing with *Henderson* and explaining that filing an amended complaint does not alter the date on which remedies were exhausted or the date on which suit was filed); *Woodward v. Daugherty*, 845 F. Supp. 2d 681, 684 (W.D.N.C. 2012) ("[A] prisoner does not comply with the mandatory requirements of 42 U.S.C. § 1997e(a) by exhausting his remedies during the course of litigation; exhaustion must occur before the filing of the lawsuit or the case must be dismissed.") (citation omitted); *Green v. Rubenstein*, 644 F. Supp. 2d 723, 743 (S.D.W. Va. 2009) ("[A] prisoner ... may not exhaust administrative remedies during the pendency of the federal suit.")

Riddick appears to argue that he tried to exhaust earlier, but that defendants did not respond to his December 2020 informal complaint or other two informal complaints. His arguments do not excuse his failure to exhaust before filing suit for several reasons.

First of all, Riddick's testimony concerning the documents he allegedly submitted is completely unsupported by the record in this case, such that the court concludes no reasonable jury could believe it. For example, he states that his December 9, 2020 informal complaint was not processed. For support, he provides a statement dated December 10, 2020—the very next day—in which he allegedly complained about the failure to respond. But that was too early for him to have known whether his informal complaint had been processed.

Further, Meade testifies that the December 2020 document was never received by the grievance department, and Riddick's grievance records contain no record of it. This fact is particularly notable because Riddick was very active in filing informal complaints and grievances during the relevant time-period. *See Moss v. Harwood*, 19 F.4th 614, 622–23 (4th Cir. 2021) (explaining that generally, where an inmate is able to file multiple grievances during

8

the relevant time period, it undercuts any claim that the grievance system was unavailable).

In particular, Meade's testimony reflects the following, which Riddick does not dispute:

- During December 2020, the grievance department received and processed fourteen (14) informal complaints from Riddick, each of which was date-stamped and assigned a tracking number upon receipt. The grievance department received and processed two (2) regular grievances from Riddick that were accepted during the intake process, and it rejected twelve regular grievances from Riddick during intake. Both the accepted and rejected regular grievances were date-stamped the day they were received, and the ones accepted for intake were assigned a log number;

- During January 2021, the same types of documents from Riddick were processed in identical fashion and numbered five informal complaints, two accepted regular grievances, and eight rejected grievances; and

- During February 2021, the same types of documents from Riddick were processed in identical fashion and numbered four informal complaints, two accepted regular grievances, and three rejected grievances.

(Meade Suppl. Aff. ¶¶ 6–14, Dkt. No. 31-1.) Riddick has offered no explanation for why he was able to file all of these other grievance documents during the same time-period, but the one (or even three) informal complaints dealing with this particular issues allegedly were not processed. Under those circumstances, he has not shown the process to be unavailable. *See Moss*, 19 F.4th at 622–23. And because defendants have presented evidence of a failure to exhaust, the burden of proof shifts to him to show that exhaustion occurred or administrative remedies were unavailable. *See, e.g.*, *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011). The court concludes he has not met that burden.

Moreover, even if he had submitted an earlier informal complaint and did not receive a response to that particular document, he later resubmitted it and received a response. Thus, even if a factfinder could be persuaded that he submitted an earlier informal complaint—or three—in December, January, or February and did not receive a response, that fact alone does not lead to the conclusion that administrative remedies were unavailable. To the contrary, as already noted,

9

the records clearly indicate that multiple informal complaints and grievances from Riddick were received and processed in the same timeframe. (Meade Suppl. Aff. ¶¶ 6–14.) Moreover, he in fact did submit the same issue, and he fully exhausted it. Thus, the grievance system was available to him.

In short, the problem here is not that there were delays in getting responses to certain grievances or that he had to resubmit them. The problem is that Riddick did not wait to give VDOC the opportunity to fully address his complaint before filing his lawsuit. The court further notes that Riddick could have dismissed this case after receiving his final denial, which told him he had fully exhausted. He elected not to do so.[3]

Riddick simply has not shown that administrative remedies were unavailable, as it is his burden to do. Instead, the record is clear that Riddick did, in fact, exhaust, but he did so after filing suit. And under the authority set forth above, that is insufficient to satisfy the PLRA. *See Henderson*, 2007 WL 2781722, at \*19; *Shabazz*, 2012 WL 463562, at \*5. Accordingly, his claims must be dismissed for failure to exhaust.

Because Riddick could attempt again to file this lawsuit, however, the court will dismiss it without prejudice. He may refile his claims in a new complaint, subject to the two-year limitations period for claims under § 1983 and subject to any restrictions imposed by 28 U.S.C. § 1915(g).

### C. Riddick's Motions

As noted, Riddick also filed a document styled as a motion for summary judgment. (Dkt. No. 22.) His motion is not a proper summary judgment motion, as it does not contain a

---

[3] In his opposition to the motion for summary judgment, Riddick also argues that it would be inefficient for the court to require him to refile another lawsuit. That may be true, but that is not within the court's control. District courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016).

statement of undisputed facts with specific record citations, as required by the local rules.  *See* W.D. Va. Civ. R. 56.  More accurately described, his motion is a brief summary of the claims in his complaint, and it includes statements explaining why he believes he is entitled to relief.  In any event, in ruling on his motion, the court would be required to view the evidence in the light most favorable to defendants.  So viewed, Riddick's motion must be denied for the same reasons that defendants' summary judgment motion must be granted (for which the facts are construed in *his* favor): Riddick has not presented facts from which a reasonable factfinder could find for him on the issue of exhaustion.

### III.  CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment will be granted, and Riddick's motion for summary judgment will be denied.  Lastly, Riddick's request for "urgency" in deciding his case will be denied as moot.

An appropriate order will be entered.

Entered: March 21, 2023.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge